Good morning, your honors. Jason Carr, appearing on behalf of Brown. Now this is a case, this is an appeal that has both individualized issues, the conflict of counsel issue is relatively prosaic, the law is well-developed, the application of facts and law to that issue is relatively simple and augurs in favor of a victory for my client. The other issues have more policy ramifications. And I'll note that this Court has expressed repeatedly over the past couple of years concern with the child pornography statutes. In fact, just last Thursday a case came down with two concurrences that, in fact, one from yourself, Judge Reinhardt, that expressed concern with the sentencing exposure, the way the child pornography statutes have been implemented. And I did 28-J that case after telling opposing counsel that it existed just on Friday. This case provides a vehicle to get into some of these policy implementations. Well, I don't think we're looking for vehicles here. There are two parts to this. One part is whether your client should have been given a lawyer when he objected to, when he requested the public defender. When he requested appointed counsel, he had retained counsel. The judge denied the appointment of appointed counsel or the, you know, without having funds that he would be entitled to the public defender. That issue underlies the entire case. And you might want to start with whether he was denied counsel, which is structural error, which would mean you didn't reach the other issues. That's certainly an orderly way to present. But then you get to what you call ordinary issues, which we would be interested in hearing the legal arguments on those issues in case we're not required to reverse the structural error. Yes, Your Honor. And the competent counsel issue is a strong issue, and I did indicate that. It's not really a competent counsel issue. The issue isn't whether his first counsel was competent. The issue is whether when he asked the court to replace the counsel with a public defender because he didn't have confidence in his counsel, whether the court was required to do that, whether it made the proper inquiries before making its decision. Why don't you just – but it's not a competent question. Nobody is questioning the competence of the original counsel.  Your Honor, you're exactly right. And I meant to say conflict. If I didn't say conflict of counsel, I did not mean to say competent counsel. And the issue is, of course, one of conflict with counsel. And I would point the court to the edge of a record, and I intended to go through – I'm sorry. Just a minute. Can I ask you a question with the answer? Do we have any idea whether he was eligible for appointed counsel? We do, Your Honor, because I, in fact, actually submitted a financial affidavit after sentencing to allow us to be appointed for appeals. I was involved with that process. You'll note at the end of the sentencing transcript, the judge directs me to do that. But he had already paid – my understanding is that he had paid his lawyer through trial. He had paid the $50,000, and that – and the lawyer said that was going to – he didn't owe him any money, right? To some degree, Your Honor. There was a conflict. That was part of the conflict, though. So it's not – I would like to answer the question simply, but this one I simply cannot, because the defendant did say during the canvass – and I will note that the operative canvass here, which I have submitted as very short, is found in excerpts of record pages 3 through 13. So 10 pages here is the extent of the inquiry about the conflict that the Court needs to concern itself with. And what the defendant said – But, Your Honor, there was no discussion at that point about his – whether he was eligible at that point, whether he had money or didn't have money. The district court did not make that inquiry, and that just was not brought up. However, the FPD representative was there ready to take over the case at the time of the hearing, President Court. And the defendant – and you'll note in the excerpt of record sections that I directed the court to take. The district judge says, obviously, if they allow you to withdraw an appointment, because he would qualify, I assume, for a public defender and appoint a public defender. The district court made that assumption but did not inquire into the actual financial circumstances. But he assumed that he wouldn't qualify. That's a fair reading of the record, Your Honor. And also, the – one of the conflicts that the client expressed was his inability to come forward with the last $10,000 that he owed the defendant. But he said he did. He said he did do it. He said it was that they wouldn't talk, that he could have – that the attorneys would not talk to him until he paid it. He had difficulty paying it. And that that was probably one of the reasons why nobody had talked to him about his defense at all one week prior to trial. What was your understanding of why the – Which is what he said. Could you listen for a minute? Yes. Why the judge denied the counsel? Did he deny it on timeliness grounds? The entirety of his ruling is found on pages 13. I know where it is. I want to know, did he deny it on timeliness grounds? He expressed concern about that, but that was not part of his ruling. In the beginning, he expressed concerns about timeliness. But that was not part of his ultimate ruling. The ultimate ruling was you paid $50,000, the Federal public defender would do a bad job, which is, of course, false. And that was the extent of his ruling. And it's on page 13. Counsel, isn't it – it's judge Gould. And, of course, I read what the district court said on it. But isn't it the case that if he had permitted the change from the paid retained counsel to the public defender, that there necessarily would have to be a continuance and pushing back to some extent of the scheduled trial date? The motion for the substitute counsel was made on December the 27th. The hearing occurred on January 10th or the 11th. The trial did not occur until February the 11th. So the motion was made about six weeks before the trial began. The answer to the question, it would not have taken long. Answering my question. But you're not answering my question. It would not have taken long. It wouldn't be long, but there would have to be a continuance to some extent, right? I'm not entirely sure. I mean, if we would have had a month to prepare for trial if he had substituted us at that hearing, I don't – I can't say for sure we would have needed continuance. Probably to get an expert, probably, yes. But, in fact, there was a continuance anyway. Excuse me? But there was a continuance anyway. There was. And, in fact, the lawyer had not gotten an expert anyway. He had not at that time, no, which belies his representation he's ready for trial. And I will note in this case that private counsel kept trying to continue the date. Wait a minute. I don't know whether it's you're too close to the microphone or do you have the loudest voice I've ever heard in this courtroom. For some reason, you're blasting. I project. That's much better. Okay. Yeah, let's try it a little lower level. Okay. Will do. The private attorneys did, in fact, try to move for another continuance before the ultimate trial date based on late disclosure from the government so that the effort to keep moving this trial date continued even in private attorneys' hands. It is fair to say that the FPD probably would have needed another month or so from the February trial date, so this trial date would probably not have occurred until March or April. Actually, it wasn't the trial counsel who asked. It was the district judge who offered the continuance. After he denied the motion to withdraw, he said, I'll give you your appropriate. You need additional time. You need a week, two weeks. You need a month. Then he said, let me confer. And then said, okay, we'll take three or four, what did he say, four weeks? Three or four weeks continuance. Judge said, I'll do it. It was not that the counsel started out saying we need more time. It was that the judge said, I think you need more time. Take more time. So that indicates the judge was not particularly concerned about the additional time. You're very correct, Your Honor. And there was a further request for continuance that I'm referring to that occurred in February. And one of the cases, the cases that look at the timeliness of the inquiry, which I would submit is the weakest factor for Brown, because he made a pretty good representation as to what the conflict was. And let's not forget that when the attorney agreed that there was an extensive conflict and an atmosphere of mistrust, that the trial judge basically threatened him in the middle of his attempt to explain the conflict. He said, if you keep talking about how you're going to be ineffective because of this conflict, I am going to fine you $50,000. And one of the inquiries in this, one of the three-factor inquiries that this court lays out for a conflict of counsel issue is the extent of the conflict and whether it allows the judge to make a meaningful and informed decision. I would submit that when you have this abbreviated type of inquiry with the threats, that would certainly minimize the ability to get to the truth of what was going on here, that that inquiry is not adequate. But regarding the timeliness factor, in one of the lead cases, a case offered by Judge Gould, Mendez-Sanchez, they state that the timeliness of the factor will not be held against the defendant if the defendant represents at the hearing that he found that his attorney was not ready for trial. In this inquiry, my client represents repeatedly that they have not even discussed the defense with him, that they haven't talked to his witnesses, and they haven't discussed the defense with him a week before trial. And that is the type of objective factor that would give rise to a mistrust between the objective client and the objective attorney when that situation occurred. This is not a case. There's no evidence in this record that it was my client's obstinacy or Melendez-Sanchez, where they gave him a new attorney and the same problems that Rob did. There's no evidence here that the source of the conflict is my client, that he refused to talk to him. And what's interesting about the money issue is although the trial attorney, the attorney at the hearing said, well, this is not about the money, he did admit later that he had nothing to do with the money, that other individuals in his firm were the people who put pressure on the clients to pay. What about the, well, at least a little bit about one of the other issues, like the transportation issue? The transportation issue is fascinating for a lot of reasons. And one thing, another, I want to reference the case from Thursday again, because I will note that the facts in that case on Thursday, Hardswick, I believe it's called, are very similar to my case with the use of peer-to-peer software. But here the government's theory is, and the briefs are pretty extensive about explaining how this works, but when you have a peer-to-peer sharing program, once you download the file into your sharing folder, it's immediately available to anybody else. And so the government's theory here is that when you download that file and leave it in your sharing folder, you are guilty of receipt, possession, transportation, and advertising. Well, I gather they've given up on the receipt and possession both. They agree that there's a lesser-included offense there. They have. And the advertising, I gather, is that somehow this file communicates what's in it, so it's an offer of something specific. Is that right? It's an interesting theory. That's right, Your Honor. I'm sorry. And the theory is that the transportation. Back off a little, I guess. Yeah. It is very difficult. On the transportation, did the government's theory depend on it actually having been sent? What if it was just sitting there, but nobody ever got it? Would that be transportation on their theory? They concede in their opening brief about approximately page 25 that they would have to prove some movement of the file. I'm sorry, what? They concede in their opening brief. They have to prove. In their answering brief about page 25, 26, they have to prove some movement of the file. I see. And, in fact, in this Court's case, Fusiac, which says that leaving something in your shared folder is distribution, which the law is a lot more firm on that theory, that this Court says in that case that you would have to prove that he knowingly left it in there and there was proof that there was some movement of a file, that at least one of the files was distributed, which leads to the question, how is that different than transportation? It's the exact same. I was about to. But that issue exactly you haven't raised, right? You haven't said there's double jeopardy on the distribution and the transportation. I don't have a distribution charge. Oh, I see. There's no distribution. I'm advertising. Advertising and transportation. I got it. Okay. If they had charged distribution, it would be a harder case for me because there is law that sanctions that theory, which gets to a --"I'm almost out of time." But it gets to a --" You might want to save your last 35 seconds for rebuttal. I'll take that advice. Thank you. Okay. Morning. William Reed for the United States Attorney's Office for the District of Nevada. I'm dealing with the first issue. Now I'm having the opposite problem, which is I can't hear you. Yes, Your Honor. I'll make sure I can be heard. I'm dealing with the first issue that the Court was concerned with, the request for substitution of counsel in this matter. The district court had to perform a balancing act. They had to, but did he? I mean, what he really did was quite the contrary of my experience. He refused to change the lawyer because the federal PDs were going to be terrible. I mean, that's the only thing he gave as a reason. Your Honor. Which is never true to begin with, but what else? Your Honor, the Court did make that may have been that was a statement, Your Honor, that was probably an intemperate remark on the Court's part. Well, I know. But what other reason did he give? He didn't give timeliness and he did give an extension. He didn't say you're not eligible for appointed counsel. He didn't say there wasn't a conflict. So what was the reason? Your Honor, I would put before the Court that the reason that what the district court hung its hat on was that the obtained counsel in this matter represented that he was prepared, had prepared, the trial notebooks were ready, witnesses were ready, that he was prepared to go to trial on Tuesday. There weren't ready. He gave them a month's continuance. He did offer to give an additional continuance. Timeliness was not one, was not the strongest factor for the government in this case. However, the preparation of counsel for the trial. He didn't even ask the public defender who was there who knew about the case. He didn't say how long would it take you to be ready. He knew that it would take the regular counsel an extra month to be ready. But he didn't say to the public defender, could you be ready in a month after? It's not even a month. It was after that. But he didn't say, could you be ready? How long would you need? He didn't seem concerned about the question of whether it would disrupt the schedule or, you know, whether there would be any problem. It wasn't an issue any more than he was concerned about whether he was eligible. He said, I'll assume he's eligible for appointment of a public defender. What is it? I mean, Judge Berzon asked. It seemed to be, I would not call this an intemperate remark. I think he was trying to do his best, act in the best interest of the defendant when he said, you've got a really good lawyer. He's one of the top. You ought to be grateful. You know, he's really good. I'm not going to replace him just because you want to replace him. You know, I mean, it was all, I've got to say, out of the best of motives. But I think it conflicts with the law if that's what his reason is. His reason being that he had the best lawyer he could get and he'd be making a mistake to switch to the public defender. I mean, it seems to me it's pretty clear that that was why he did it. And if you think the record shows something else, please show us where in the record he gives a different reason. Your Honor, I think that what the Court was attempted to do is to flesh out the nature of the conflict But in this instance, under the case laws, I understand it. This is not – because he was trying to replace an appoint – a retained counsel, he had a right to do that, just because – acts in some good reason, why not? In other words, he didn't really have to show a conflict, as he might have if you just had an appointed counsel to be replaced by an appointed counsel.  Right. Sixth Amendment. Okay. So he didn't – so the conflict, whether there was or wasn't a conflict, isn't the question, right? Because he has a right to choice of counsel if he's asked a lawyer he was paying. That's correct. As I understand the law, Your Honor, that's correct. But he was not trying to substitute with newly retained counsel. He was asking for appointed counsel. But we have one case on that issue which says that, as I understand it, that, you know, absent some reason to think that he's not eligible, there has to be an inquest whether he's eligible for the appointed counsel or some other reason. But the only reason he gave, the judge gave, as Judge Reinhart says, is, you know, you've got a perfectly good lawyer. Is that a good reason? On its own, Your Honor, that would not suffice. But the court probed, attempted to probe and asked the defendant repeatedly, what's the nature of your conflict? I know. But is the conflict relevant at this – for this kind of a problem? It is not, because under the law of this circuit, the conflict has to be extensive, irreconcilable. I thought it does not when you're talking about retained counsel. If there was a suggestion that retained counsel be replaced, but here he was asking for – if you wanted newly retained counsel, then it would not be relevant. But if you're asking for appointed counsel, then – What is the case law supporting that conclusion? What about the Rivera-Corona? Your Honor, I would – What does Rivera-Corona say about this? Rivera-Corona? Yes. Your Honor, I'm not – I did not have that in my brief. I'm not familiar with that. Well, Rivera-Corona is the one case of this Court that deals with replacing a retained counsel with an appointed counsel. Your Honor, in this case, the Court fleshed out the nature of the conflict, and there was no conflict, so the Court didn't need to go further because the counsel was prepared and it was – Counsel, Judge Gould. Yes, Your Honor. I thought what Judge Berzon was questioning was whether under our circuit precedent of Rivera-Corona, there was no need for the appellate here to show a conflict because he's switching from a retained counsel to a requested appointed counsel. And I thought she was suggesting that we held a conflict was needed for that in that Rivera-Corona case. Your Honor, I'm not familiar with that particular case, but that's the way I understand the law, that the conflict would still be necessary and the Court would still have to go through this Court's three-part test, that is, the nature of the conflict, the extensiveness of the Court's inquiry. Maybe you want to go over to Rivera-Corona and write us a 28-day letter. Yes, Your Honor. I will. What about the transportation issue? How is this transportation? Your Honor, the transportation issue here, the peer-to-peer software involved – first of all, the evidence showed that the investigation, there was a video that was transmitted by the computer internet to the investigating officers, in this case, transportation. Does it matter whether – suppose it hadn't been, in fact, transported. It was just sitting there. Does that matter? But it could have been transported. It does matter, Your Honor. I would concede if it hadn't. And the client, the defendant, had nothing to do with whether it was or wasn't transported directly, right? It was just sitting there. And somebody pushed the button. It was transported. If it didn't, it wasn't transported. So why should it matter whether it was, in fact, transported? Your Honor, the government's argument is that because the program, the peer-to-peer program had been set up at the defendant's computer to allow others to take videos and child pornography from the computer, the distribution, if you will. That's a term of art. I understand that. What I'm asking you is, as you are understanding transportation, it isn't good enough that it just is sitting there and if somebody pushes the button, it will be transported, right? It's – if the defendant has set it up to where he's installed a program to allow that to occur and it occurs and it's moved across the internet from computer to computer, even if the defendant does not initiate that at the time that it occurs, it is going to be transported. But if it doesn't move, then it isn't transported. That's your theory. I would concede that, Your Honor, if it does not move at all. But once it moves through a peer-to-peer program that's been established or set up by – Right. So let's say I have a couch I want to get rid of and I put it out in front of my house and I put a sign on it. You know, anybody who wants this can have it. I can understand that I'm distributing the couch, but if somebody then comes and taking it, am I transporting it? In that instance, I would – that is not analogous to what occurred here, because here the defendant set the chain of events in motion. In this Court, in the Buziak case, B-U-D-Z-I-A-K, if I pronounced it correctly, has already found that distribution, even if the defendant does not distribute it, that it's under the – Well, but that is distributing it. I mean, they use the self – let's go back to the self-serve gasoline station. I mean, if the gasoline station is open and anybody who wants to take it can take it, it's being distributed. But is it being transported?  No, I was talking about my analogy, the hypothetical. Am I transporting the gasoline by leaving it there for anybody who wants to take it with a credit card? If no one takes it, then – No, somebody takes it. But am I – I'm distributing it, but am I transporting it? Yes, Your Honor, you have if it moves from the location. And here the evidence is the video moved from one location, that is, the defendant's computer, to the – I'm having a very hard time. I understand it moved, but I don't understand why I moved it. Because you set up – if you set up the program to allow it to occur, the passive movement under this Court's case law constitutes distribution. That is, if someone else actually receives it. In this case, it wasn't charged as distribution where someone received it, just that it was transported from computer to computer as the statute contemplates, would be the government's position on that, Your Honor. Your Honor, there were also – there was also an issue – But would I have – the actual phrase is mailed, shipped, or transported. Would I have mailed it under those circumstances? No, Your Honor, but the – Well, why did I – don't you think transport has to be interpreted similarly to mail and ship, with some agent behind it? Under the predecessor version of the statute, it would have, Your Honor, but the Congress changed the statute in 2008 to allow for any time a facility of interstate commerce is – Well, that has to do with the interstate commerce question, but I'm asking, did I mail, did I transport it? Did I – did I mail it by doing that? Presumably not. It's – the statute says by any means, including by computer, to transport. So that would – that would – moving from computer to computer does not have to be mailed. In this case, that's what occurred from computer to computer, Your Honor, and that's the transportation. Counsel, in a case where someone has this LimeWire PTP program and they get pornography and pornography flows out of their computer to someone else, is there always in that and a distribution of pornography violation? And is there also always a transportation violation? Your Honor, I would – I would answer that in the affirmative, that if it's flowing out of the computer, first it flows into the computer, then there are arguably the elements of receipt would have been established. If it flows out and some – and the government can establish that someone else received it, then the distribution would be established, and if the government could prove that it moved from computer to computer, the transportation, the government could prove that. And it was also advertising, because the only way this is all operating is because it's identified. Is the use – is the use of the PTP, then, where pornography does flow out of the transportation and advertising? Is that what Congress intended? Your Honor, it will support all four of those separate crimes. They all have separate elements, and under the Sewell case, it's from, I believe, the Fourth or Eighth Circuit, that transportation – or I'm sorry, advertising, when it is offered pornography, child pornography over a peer-to-peer, that also involves advertisement as well, Your Honor. So there are separate offenses with separate elements. But the problem is that as applied to this circumstance, there is no separate act at all. The person does not have to do anything differently to be – as applied to this   The problem is that the government does concede the possession, receipt, advertising, distribution, and transportation by doing one thing. Well, the possession – the government does concede the possession and the receipt. They are less included. I understand. Leave that one out. The other four, you don't have to do anything else. Well, the distribution – Well, that's the nature, Your Honor, of the peer-to-peer software that allows other individuals to tap into after you've advertised it and then moved it, transported it, and distributed it. It's the nature of the medium, Your Honor. So they are separate. They are separate. government nevertheless still has to establish them. It's somewhat pernicious to combine a PTV program with child pornography because that pornography can flow out to the whole world, right? Anybody with a computer who's got that program. It certainly advertises it to the others who have the program. Yes, Your Honor. Allows other individuals who've established the program to – And how do we know – so if – let's say the pornography flows in and out. So we know there's receipt of pornography, there's distribution of pornography, there's transportation and advertising. At least four crimes from having that on your computer and getting stuff in and out. Correct? That's correct. Separate elements under Blockburger. Yes, Your Honor. Putting aside double jeopardy, did Congress really intend that? Under the rule of lenity, would we interpret the statute in a way that would permit so many offenses from putting the program on your computer and taking pornography in and having it flow out passively? Your Honor, I would answer that in the affirmative that Congress did intend that because of the separate elements that they require the government to establish beyond a reasonable doubt. Why they did it, I'm not – I can't answer that, but they certainly – Okay. In this context, what would be the different – there would be a different element in advertising and in transportation, I guess. But would there ever be a case where you had advertising but not transportation, or you had transportation but not advertising when you're using a PTB program? Your Honor, I think you could have advertising without the transportation if someone were to able – were able to see that you were offering, so to speak, the availability of certain child pornography without it having been – without asking to download that and transporting it to another computer. So you could have the advertising, I would suggest to the Court. However, transportation, if you had the transportation with the peer-to-peer, Your Honor, I would submit that you would have had to have advertised it prior to the transportation, so the reverse would not be true, Your Honor. So there would always be advertising, but there would only be transportation if somebody accessed your computer and took stuff out of it, right? With a peer-to-peer network, as I understand how that operates, there would be – if there's transportation, it would have to have been preceded by the advertising, Your Honor. There would always be advertising, but there would not be transportation if someone just looked but didn't push the button to transfer the file. If they just – as I understand Your Honor's question, if they just looked and saw the title, the subject matter, but did not, to use Your Honor's term, push the button, then there would not be the transportation, yes, Your Honor, as I understand. There could be advertising without transportation. Thank you, counsel. Yes, Your Honor. Unless there are any additional questions, I'm out of my time. And I will provide the Court with that letter. Let me suggest this. At conference, like, we may discuss whether to ask for supplemental briefing on that issue rather than a 28-J letter because that way the Browns counsel would be heard in an orderly way. All right. We'll let you both know what additional material we want, if any. Thank you, Your Honor. You don't have to send anything until we get – Thank you, Your Honor. – advise you. And then you push the button. All right. Okay. You have 33 seconds, but we'll be very generous and give you a minute. I didn't – we didn't discuss Rivera-Corona, but I did discuss the analogous. Gonzales-Lopez was a U.S. Supreme Court case which basically says that you can switch from retained to retained without any real basis for a conflict, and you have an absolute right to do that. And the erroneous denial of that right is structural error, and that's cited in my briefs. The Supreme Court case, Gonzales-Lopez. But, of course, Rivera-Corona is very important as well. I would note that the government has – Judge Gould's question was excellent, I thought, because it goes to the two elements of merger. There's two aspects of it. There's a constitutional blockburger analysis, which if there's different elements, that doesn't apply. But there's also the statutory construction analysis, which is paramount in this case, whether Congress intended one discrete act to give rise to four different convictions, one of which has a 15-year mandatory minimum. Am I correct? I'm correct in believing that, although this is an interesting question, it's not going to make quite a difference in this case. This issue does not make a difference in this case. Is that right? Which issue? I'm sorry? The transportation issue. It doesn't make a huge difference as to the sentence, because advertising governs all the sentences because it's the 15-year mandatory minimum. The advertising conviction is the most important. One last thing I'd like to note is in the Bluziak case, the case the government relies on heavily. It says that the elements that show distribution under peer-to-peer are as when the government proves the defendant maintained child pornography in his shared folder, this is a quote, knew that doing so allowed others to download and another person actually downloaded it. So this Court has said for distribution, there has to be this proof of the movement of the file. And I will also note in this case that the only movement that occurred here of a file, the only proof was from the law enforcement agent, which incidentally, they never found that file they initially downloaded in my client's home on any of his computers, which is interesting. Thank you. Thank you, Counsel. Thank you. This argument will be submitted. The Court will stand and recess for the day.
judges: REINHARDT, GOULD, BERZON